**UNITED STATES of America**

v.

**Jerome C. BECK, James R. Stanford, John Wesley Jones, Ralph Harrington.**

**Cr. No. 40000.**

United States District Court
S. D. Texas, Brownsville Division.

Feb. 3, 1956.

Supplemental Opinion Feb. 17, 1956.

Malcolm R. Wilkey, U. S. Atty., Houston, Tex., Brian S. Odem, Asst. U. S. Atty., Brownsville, Tex., for plaintiff.

Harry Lewis, Brownsville, Tex., for defendants Beck, Stanford and Jones.

Charles C. Bowie, San Benito, Tex., for defendant Harrington.

ALLRED, District Judge.

Defendants are charged with smuggling ten "cartuchos" of marihuana (weighing approximately 8 ounces), in violation of 18 U.S.C. § 545. Heretofore they were arraigned upon a prior indictment charging the same offense, to which Beck, Stanford and Jones entered a plea of not guilty and Harrington pled guilty. The court accepted Harring-

ton's plea and the government thereupon dismissed as to Beck, Stanford and Jones. However, when Harrington was questioned by the court preliminary to sentence, he denied guilty knowledge. The court ordered his plea of guilty withdrawn and appointed the Honorable Charles C. Bowie to represent him. Thereafter the case was re-presented to the grand jury resulting in the present indictment. Harrington, an airman stationed at the Harlingen Air Force Base, defaulted on his bond. The court was informed that Harrington had had a fight and was A.W.O.L. from the armed forces. Nevertheless the bond was forfeited.

Jury trial was waived and the case has been heard by the court as to Beck, Stanford and Jones. The evidence follows a familiar pattern of young soldiers or young men coming to the Mexican border.

Shortly after midnight October 2, 1955, Customs Agent Bobo received a telephone call from Matamoras, Mexico, from a "reliable" informer, that three colored boys in a car bearing a certain numbered license plate were in the red light district in Matamoras, Mexico (across the Rio Grande River from Brownsville), with a taxi driver named "Pero"; that Pero was making inquiry as to marihuana. Pero had a reputation as to marihuana, having previously been sent to prison in this court on a marihuana charge, after which he was deported to Mexico. Bobo relayed this information to Customs Inspectors at the Gateway International Bridge so as to alert them to watch out for the car. Some time later the described car (a Ford Tudor Sedan) was driven up to the inspection station from Mexico with four occupants, all young colored men. Defendant Jones was driving; Stanford was in the front seat on the right hand side; Harrington and Beck were in the back seat. Inspector Guajardo questioned the four occupants as to whether they were bringing anything in from Mexico.

Each replied in the negative. Guajardo then asked them to get out of the car and began to search it. He looked under the hood, found nothing and then under the front seat on the right hand side he found a package containing 10 "cartuchos" of what he believed to be marihuana. A later chemical analysis showed that it actually was marihuana.

Inspector Guajardo called Bobo who came to the bridge, received the package and questioned the four occupants of the car. All denied knowledge or ownership of the package. Each told a fairly consistent story, practically to the same general effect as the testimony of Jones and Beck on the witness stand; generally that Beck and the absent defendant Harrington were airmen stationed at the Harlingen Air Force Base; that Jones worked as a janitor for Southwestern Bell Telephone Company at Harlingen; that the three met at a cafe, patronized by colored people there; that Jones agreed to take them in his car to the red light district in Matamoras (about 30 miles distant) for $2 each; that they arrived there about 12:30 a. m., parked the car[1] around the corner from the Golden Palace on a side street, and separated, agreeing to meet a couple of hours later and return to Harlingen; that Jones ran into defendant Stanford, also an airman from the Harlingen Air Force Base, and invited him to ride back with them so he could drive the car when they reached the American side since Jones had drunk a good many beers; that they did not know or talk to "Pero", or anybody else about marihuana and knew nothing about the package that was found under the front seat.

Agent Bobo took sweepings from the clothing and pockets of all four defendants. Upon analysis by the government chemist at New Orleans, the sweepings showed no trace of marihuana. Generally where a defendant has had any contact with marihuana, traces will be found in such sweepings. The unknown

---

1. One of the car doors would not lock.

and unnamed "reliable" informer in this case was paid a reward of $100. Under 19 U.S.C.A. § 1619, an informer *may* be awarded and paid up to 25% of the amount recovered for duties withheld, or as a fine, penalty or forfeiture under the customs laws, not to exceed $50,000. If any vehicle, merchandise or baggage is forfeited, compensation up to 25% of the appraised value *may* be paid. Agent Bobo testified that the amount allowed varies, dependent on the amount of marihuana seized as a result of the information, the number of persons involved and the value of the vehicle.

At the conclusion of the Government's evidence, the court sustained a motion for verdict of acquittal as to Stanford since only three colored boys were involved in the story passed on by the informer and, without dispute, Stanford thereafter had joined up with the others. The court overruled motions for acquittal by defendants Jones and Beck in view of the provisions of the smuggling statute, 18 U.S.C. § 545, that proof of possession of smuggled goods, unless satisfactorily explained, shall be deemed evidence sufficient to authorize conviction.[2]

Jones and Beck testified in convincing fashion that they knew nothing of the marihuana and thus refuted the presumption to my satisfaction. They stood up well under cross examination and neither Inspector Guajardo nor Agent Bobo disputed their testimony in any respect as to what was said between them. Beck and Harrington are 19 years old, Stanford 22 and Jones 25. Neither Beck nor Jones have "criminal" records other than minor arrests, never prosecuted, common to colored boys of their age.[3] Their trip to and presence in the red light district, while not to be commended, is understandable and all too common for boys away from home.[4]

■■ The court found Jones, Beck and Stanford not guilty. In addition to their convincing testimony, the presumption of guilt from "possession" raised by law was more than offset by the possibility of the marihuana having been planted. Agent Bobo testified that while he had not known of many cases in which evidence had been planted to secure a reward, he had known of *some* instances. While informers are necessary to law enforcement in marihuana and narcotic cases, and some of them may be "reliable",[5] their operations smack of "dirty business", the term applied by Justice Holmes in condemning wire tapping. Courts therefore always should be alert to see that no injustice results from the "informer" system. To the type of man who himself frequents red light districts across the river for the purpose of informing, a reward of even less than $100 might be a tempting morsel. Conceivably such a character might even work with marihuana dealers. Here there was opportunity and incentive for a plant. This possibility is as reasonable a presumption as the one of guilt that arises from the fact of possession. The court cannot accept the hearsay statement of a professional

---

2. The fact of possession itself had to be presumed here—constructive possession from the fact that Jones was driving the car in which the marihuana was found and Beck was with him. Had it not been for the informer story—which is the rankest hearsay—the court would have held that no possession was shown in Beck. Of course, if possession is not shown, there is no duty to explain.

3. Stanford had a clear record in every respect. Harrington's record, if any, was not inquired into since he was not on trial.

4. Beck is from Wilmington, Delaware, Stanford from Indiana, Harrington from Pennsylvania.

5. In the Laredo division a few years ago, one of these informers for the customs' service, whose information had brought about many seizures and prosecutions, was caught doing a pretty good marihuana business on the side by a narcotics agent posing as a big dealer from the north. When the second delivery was to be made, the narcotics agent invited the customs agents to participate. Both services were surprised to find that the marihuana dealer was an informer who had neglected to "inform" his principal (a customs' agent) of the delivery that was to be made.

informer, not present to confront a defendant and to be subjected to cross examination, as a substitute for proof of guilt.

The Clerk will furnish counsel with a copy of this memorandum.

### Supplemental Opinion.

On February 4, 1956, defendant Harrington voluntarily appeared and surrendered himself to the United States Marshal. Immediately thereafter the court was advised that the military authorities desired custody of Harrington to answer an "AWOL" charge and it was agreeable to the United States Attorney to release him to the military authorities.

The court was advised that the same facts would apply to Harrington as to the three co-defendants found not guilty by the court on February 3, 1956. The court thereupon dismissed as to defendant Harrington and, on motion of the government, set aside the bond forfeiture since defendant voluntarily appeared at no expense to the government.

The Clerk will notify counsel of the entry of this supplemental memorandum.